**Helen R. EATON, Plaintiff,**

v.

**MASSEY–HARRIS–FERGUSON, Inc., and Ellsworth B. Hodges and Marian A. Hodges, d/b/a Cherry Creek Motor Sales, Defendants.**

**Civ. A. No. 7033.**

United States District Court
W. D. New York.

April 8, 1957.

4. Cf. Thompson v. Trent Maritime Co., Ltd., D.C., 149 F.Supp. 468, 1957 A.M.C. 781.

Charles J. Mistretta, Jamestown, N. Y., for plaintiff.

Rollin A. Fancher, Jamestown, N. Y., for defendant, Massey-Harris-Ferguson, Inc.

Lombard & Pickard, Jamestown, N. Y., for defendants, Ellsworth Hodges and Marian A. Hodges, d/b/a Cherry Creek Motor Sales.

MORGAN, District Judge.

Plaintiff has brought this action on the sale to her by the defendants of a combine harvesting machine and sets out three causes of action, to wit, (1) Breach of Express Warranty, (2) Breach of Implied Warranty of Fitness, and (3) Breach of Implied Warranty of Merchantability. At the end of the presentation of plaintiff's case, the complaint was dismissed as to defendant, Massey-Harris-Ferguson, Inc., leaving only Ellsworth and Marian Hodges, d/b/a Cherry Creek Motor Sales as defendants.

Plaintiff's principal contention is that a part known as an extension feed plate was missing from the combine when it was delivered to plaintiff. Plaintiff did not sustain her burden of prov-

ing that by a fair preponderance of the evidence.

█ It is apparent that the combine here concerned did not function as plaintiff desired. Several repairs and adjustments were made, seemingly to no avail. As a first cause of action, plaintiff alleges breach of express warranty. It is true that plaintiff received an express warranty when she purchased the combine. But that warranty applied only to the pick-up head attachment. Written on the face of the contract between the parties (exhibit 5) was the phrase "Pick-up att. must work on trefoil." No recovery can be based upon this warranty, since plaintiff has testified that the attachment worked very well.

█ For the existence of any other warranties, we must look to the contract and the acts of the parties. The contract on its face is an anachronism. It is a standard printed contract of sale furnished by the Chevrolet Division of General Motors Corporation. The writing on the contract clearly enough identifies the transaction, but the bulk of the printed matter, and particularly the warranties printed upon the reverse of the contract, are patently absurd when applied to this transaction. We can reasonably assume that neither General Motors nor the Chevrolet Division thereof will or intends to warrant or guarantee any Massey-Harris equipment in any way. Nor can specific warranties, guaranteeing the vehicle subject of the contract for four thousand miles, possibly be construed as applying to the combine concerned here. Rather than pick or choose language and phrases from the printed form which may apply to the combine, we are constrained to limit the applicability of the contract to the writing on the face thereof, and look to the acts of the parties to supply anything not explained by the writing.

It is clear on the basis of the writing on the printed contract, that plaintiff received no warranties other than that pertaining to the pick-up head. Further, in view of the plaintiff's testimony that there were no guarantees, other than that mentioned above, made to her during the course of the transaction, we are unable to find any specific warranties attaching to the combine subject of this sale. For reasons referred to infra, at plaintiff's second cause of action, no warranties can be based upon the Massey-Harris brochures introduced in evidence.

█ Even if we should take a different view of this contract, and apply the entire document to this transaction, the result would be no different. The contract specifically provides in lieu of all other warranties, express or implied, for replacement of defective parts within ninety days or four thousand miles, whichever occurs first, providing that the vehicle is returned to the manufacturer, transportation charges prepaid, and the manufacturer's examination discloses the existence of defective parts. In view of the facts established on trial, we can find no breach of express warranty on the printed contract.

█ As to plaintiff's second cause of action, for breach of an implied warranty of fitness, the law is well settled in New York that "In the case of  *  *  *  a sale of a specified article under its patent or other trade name, there is no implied warranty as to its fitness for any particular purpose" (Personal Property Law, McKinney's Consol.Laws, c. 41, § 96, subd. 4). Plaintiff has openly stated that she approached defendant, Cherry Creek Motors, and stated that she wanted a specific model Massey-Harris combine, that she was interested in, and would buy, nothing else. Plaintiff has admitted that the salesman for Cherry Creek repeatedly told her, from the time of the first contact until after the sale, that he knew nothing about combines and could tell her nothing about them. Further, we cannot find any possibility of implied warranties based upon the brochures supplied by Massey-Harris-Ferguson Co. They are merely descriptive in nature, in the same way that many manufacturers' brochures are, and do not in any way warrant or guaranty the products de-

**856**

scribed therein. In view of the above, and of the obvious familiarity with combines and combining displayed by the plaintiff while on the stand, we cannot find that plaintiff placed any reliance on the judgment of the defendant, Cherry Creek. In fact, her testimony reflected a very definite knowledge, as well as a clear and concise understanding of what she wanted. This sale falls squarely within the scope of Personal Property Law, § 96, sub. 4, and plaintiff's second cause of action must fail.

■ If we follow the reasoning of Cardozo, J., in Ryan v. Progressive Grocery Stores, 255 N.Y. 388, at page 392, 175 N.E. 105, 74 A.L.R. 339, we may reasonably conclude that the warranty of fitness, plaintiff's second cause of action, bears no relation to the warranty of merchantable quality urged as plaintiff's third cause of action. Further, we could not find a lack of merchantability if we were to conclude, which we do not, that the extension feed plate was indeed missing when the combine was delivered to plaintiff. In support of his third cause, plaintiff cites Kelvinator Sales Corp. v. Quabbin Improvement Co., Inc., 234 App. Div. 96, 254 N.Y.S. 123, and Marino v. Maytag Atlantic Co., Mun.Ct., 141 N.Y.S. 2d 432. In those cases, the machinery or equipment complained of proved incapable of fulfilling the sole function for which they were manufactured and sold, and they are distinguishable on those grounds. In its brief, plaintiff states "can it be doubted that a combine that does not combine can hardly be classed as of merchantable quality." The answer, of course, is no. But the evidence here at best discloses only that the combine would not combine trefoil and vetch as plaintiff expected or desired, not that it was not generally suitable for combining.

In view of this decision, we need not treat the question of measure of damages.

Accordingly the complaint is dismissed with costs. Order may enter.